**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| (1) CHARLES WEEKLEY, <br> (2) BARBARA WEEKLEY, <br> (3) JASON WEEKLEY, <br> (4) NATHAN WEEKLEY, <br> (5) MATTHEW WEEKLEY, <br><br> Plaintiffs, <br><br> v. <br><br> (1) BENNETT MOTOR EXPRESS, LLC, <br> (2) LIBERTY MUTUAL INSURANCE CO., <br> (3) JAMES WELLS, <br> (4) TAYLOR TRUCK LINE, INC., <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | Case No. 11-CV-228-TCK-PJC <br> [consolidated for all purposes <br> with 11-CV-569-TCK-PJC] |

## OPINION AND ORDER

Before the Court are Defendant Liberty Mutual Insurance Company's Motions to Dismiss or Alternatively Motion for Summary Judgment ("Liberty's Motions for Summary Judgment") (Docs. 18, 21, 22); Defendants Bennett Motor Express, LLC and James Wells' Motion to Realign Parties ("Defendants' Motion to Realign") (Doc. 19); Defendant Taylor Truck Line Inc's Motion for Leave to Amend its Cross-Claim ("Taylor's Motion to Amend") (Doc. 42); and Defendants Liberty Mutual Insurance Company, Bennet Motor Express, LLC, and James Wells' Motion to Dismiss Claims of Jason, Nathan, and Matthew Weekley ("Defendants' Motion to Dismiss Claims of Adult Children") (Doc. 20).

**I.     Facts Alleged in Complaint**

On or about May 27, 2009, Plaintiff Charles Weekley ("Weekley"), an Ohio resident, was

operating a tractor/ trailer for Defendant Taylor Truck Line, Inc. ("Taylor"), a Minnesota corporation. Defendant James Wells ("Wells"), a Maryland resident, was operating a tractor/trailer for Defendant Bennett Motor Express, LLC ("Bennett"), a Georgia corporation. The tractor/trailer operated by Weekley was struck by the tractor/trailer operated by Wells, thereby "tearing off all of its axles and wheels, pinning Weekley in the vehicle and causing the trailer to strike a culvert and concrete barriers." (Compl. ¶¶ 13-14.) Weekley suffered injuries to his head, brain, shoulder, back, legs, heart, and other parts of his body.

The Complaint contains the following six "counts": (1) negligence, asserted against Wells and Bennett; (2) "[d]irect action" against Bennett's insurer, Liberty Mutual Insurance Company ("Liberty"),[1] pursuant to title 47, section 230.30 of the Oklahoma Statutes; (3) damages; (4) punitive damages; (5) loss of consortium, asserted against Wells and Bennett;[2] and (6) "[s]ubrogation - [n]ecessary parties," alleging that Taylor is a "necessary and indispensable party" due to subrogation rights possessed by Taylor arising from its payment of workers' compensation benefits to Weekley.[3]

Taylor filed a Cross-Claim against Bennett, Wells, and Liberty, alleging that "[i]n the event that [Taylor] is deemed to be a necessary and indispensable party to the above-captioned matter and Oklahoma is determined to be the proper forum for the determination of [Taylor's] subrogation

---

[1] Liberty is a Massachusetts corporation.

[2] The loss of consortium claim is asserted by Weekley's wife, Barbara Weekley, and his three adult children – Jason, Nathan, and Matthew Weekley.

[3] On September 26, 2011, a case entitled *Great West Casualty Company v. Bennett Truck Lines (a/k/a Bennett Motor Express), James Wells, Liberty Mutual Insurance Company, and Taylor Truck Line, Inc.*, 11-CV-569-CVE, was consolidated with this case for all purposes. In that action, Great West Casualty Company seeks subrogation in the amount of $100,000, which represents an amount it paid to Weekley pursuant to an uninsured/underinsured motorist policy on the tractor/trailer operated by Weekley.

claims, [Taylor] hereby pleads the following cross-claims as alternative claims for relief." (Cross-Claim, Doc. 9.) Taylor alleges that, as a result of Bennett and Wells' negligence, it has paid and will continue to pay workers' compensation benefits to Weekley in excess of $75,000. Taylor alleges that "[p]ursuant to Minn. Stat. § 176.061, and by virtue of its payments of workers compensation benefits to Weekley, [Taylor] has a right of subrogation against [Wells, Bennett, and Liberty] for the recovery of all benefits paid and payable." (*Id.* at ¶ 17.) Taylor then alleges three "counts": (1) negligence against Wells and Bennett; (2) respondeat superior/agency against Bennett, alleging that Wells was acting within the scope of his employment; and (3) "direct action" against Liberty, pursuant to title 47, section 230.30 of the Oklahoma Statutes.

## II. Liberty's Motions for Summary Judgment

Absent a statutory directive, a plaintiff does not have a right "to bring a direct action against the insurer of an alleged tortfeasor." *Daigle v. Hamilton*, 782 P.2d 1379, 1383 (Okla. 1989). Plaintiffs and Taylor rely upon title 47, section 230.30 of the Oklahoma Statutes ("§ 230.30"), a provision of the Oklahoma Motor Carrier Act ("OMCA"), as their statutory authority for direct suit against Liberty. Liberty moves to dismiss or, alternatively, for summary judgment on grounds that § 230.30 does not apply to Bennett because Bennett does not have an Oklahoma motor carrier license and therefore did not file a copy of its Liberty policy with the OCC. Because the Court has considered evidence outside the pleadings in deciding Liberty's motions, the Court treats Liberty's motions to dismiss as ones for summary judgment.[4]

---

[4] Plaintiffs and Taylor had adequate notice of the possibility of conversion to summary judgment because the motion was styled in the alternative. *See Marquez v. Cable One, Inc.*, 463 F.3d 1118, 1121 (10th Cir. 2006) (holding that, where motion was styled as one to dismiss or, alternatively, for summary judgment and included evidentiary materials outside of the complaint, the "plaintiff had explicit notice that the district court would convert it to a motion for summary

3

### A. Summary Judgment Standard

Summary judgment is proper only if "there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of showing that no genuine issue of material fact exists. *See Zamora v. Elite Logistics, Inc.*, 449 F.3d 1106, 1112 (10th Cir. 2006). The Court resolves all factual disputes and draws all reasonable inferences in favor of the non-moving party. *Id*. However, the party seeking to overcome a motion for summary judgment may not "rest on mere allegations" in its complaint but must "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The party seeking to overcome a motion for summary judgment must also make a showing sufficient to establish the existence of those elements essential to that party's case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323-33 (1986).

### B. § 230.30(A) of OMCA[5]

The statute relied upon by Plaintiffs and Taylor as providing a direct cause of action against Liberty provides:

> A. No license shall be issued by the Commission to any carrier until after the carrier shall have filed with the Commission a liability insurance policy or bond covering public liability and property damage, issued by some insurance or bonding company or insurance carrier authorized pursuant to this section and which has complied with all of the requirements of the Commission, which bond or policy shall be approved

---

judgment"). Further, neither Plaintiffs nor Taylor filed an affidavit pursuant to Federal Rule of Civil Procedure 56(f) alleging that they needed additional discovery to respond to the motions. Therefore, the Court finds it proper to treat Liberty's motions as motions for summary judgment.

[5] In *Sallee v. L.B. White Trucking, Incorporated*, No. 11-CV-212-TCK, 2012 WL 314237, at * 4-5 (N.D. Okla. Feb. 1, 2012), this Court provided a more detailed explanation of the OMCA statutory and administrative scheme. The Court did so because, in *Sallee*, there was evidence that the motor carrier held both an Oklahoma motor carrier license and an interstate license issued by its home state, raising a more difficult issue than that presented here.

> by the Commission, and shall be in a sum and amount as fixed by a proper order of the Commission; and the liability and property damage insurance policy or bond *shall bind the obligor thereunder to make compensation for injuries to, or death of, persons, and loss or damage to property, resulting from the operation of any carrier for which the carrier is legally liable.* A copy of the policy or bond shall be filed with the Commission, and, *after judgment against the carrier for any damage, the injured party may maintain an action upon the policy or bond to recover the same, and shall be a proper party to maintain such action.*
> . . .

Okla. Stat. tit. 47, § 230.30(A) (emphasis added). Generally, "to state a claim against an insurer under § 230.30, a plaintiff need only allege that: (1) he suffered injury; (2) the injury occurred by operation of a motor carrier; and (3) the motor carrier was required to be and was in fact insured pursuant to § 230.30." *Mize v. Liberty Mutual Ins. Co.*, 393 F. Supp. 2d 1223, 1226 (W.D. Okla. 2005).

The "after judgment" language in the last sentence of § 230.30 seems to require an injured party to obtain judgment against the motor carrier prior to obtaining a right to sue the insurer. However, despite this "after judgment" language, the statute has been consistently interpreted by the Oklahoma Supreme Court and the Tenth Circuit as allowing a joint action against the motor carrier and its insurer in a single lawsuit. *See Daigle v. Hamilton*, 782 P.2d 1379, 1381 (Okla. 1989) (interpreting version of statute with "after judgment" language) (holding that the Oklahoma Supreme Court recognizes "joint actions against motor carriers and their insurers under [the] statute requiring the carrier to file a liability insurance policy . . . with the Corporation Commission before a permit to do business in Oklahoma is issued"); *Enders v. Longmire*, 67 P.2d 12, 15-16 (Okla. 1937) (discussing question of whether "after judgment" language, which was added to the statute in 1929, "restrict[ed] the injured party from suing the insurance company until after judgment had first been secured against the motor carrier" and concluding that the legislature did not intend such a

5

restriction); *see also Blanke v. Alexander*, 152 F.3d 1224, 1230 (10th Cir. 1998) (concluding that joinder of motor carrier's insurer and reference thereto throughout the trial was proper because a joint action was authorized by Oklahoma law); *Mize*, 393 F. Supp. at 1226 ("The Oklahoma Supreme Court has long held that Okla. Stat. tit. 47, § 230.30, formerly Okla. Stat. tit. 47, § 169, creates a direct cause of action by a person injured by operation of a motor carrier against the motor carrier's insurer, provided of course that the motor carrier is required to be insured under the statute.").[6]

The motor carrier's insurer is directly liable to the injured party "by reason of the statute," and not by reason of its insurance policy or bond. *Daigle*, 782 P.2d at 1381; *see Blanke*, 152 F.3d at 1230. The Oklahoma Supreme Court has explained the policy reasons behind allowing direct actions against a motor carrier's insurer:

> [T]he insurer under a compulsory insurance policy may be joined as a defendant with the insured in an action by an injured third person, generally, on the theory that under statutes requiring and controlling compulsory insurance, a direct or joint right is created in favor of the injured person against both the insured and the insurer. And our Court has on many occasions held that where a motorist is required by statute or ordinance to file a policy of liability insurance to protect the interests of the public or injured persons, though not expressly giving to them a direct benefit under the policy, the joinder of the insurer and the insured in the same action is permitted.

*Tidmore v. Fullman*, 646 P.2d 1278, 1281-82 (Okla. 1982). Thus, joinder of the motor carrier's insurer is generally permitted because: (1) the compulsory nature of the insurance creates a right in favor of the injured party; and/or (2) the public filing of the insurance policy creates a right in favor of the injured party.

---

[6] Liberty cited and attached certain unpublished decisions holding otherwise, none of which the Court finds to be persuasive or binding authority. (*See* Exs. D-F to Liberty's Mots. for Summ. J.) Instead, the Court follows the cases cited above.

C. **Analysis**

In the Complaint, Plaintiffs allege:

> Defendant Bennett has been issued a certificate as a motor carrier by the State of Oklahoma. As part of this filing by Bennett, defendant Liberty Mutual filed a certificate of indemnity insurance for Bennett in Oklahoma pursuant to 47 O.S. Section 230.30 of the Code of Oklahoma.

(Compl ¶ 17.) In its Cross-Claim, Taylor is less specific and simply alleges that it may hold Liberty liable pursuant to § 230.30, with no alleged facts supporting the statutory requirements. (*See* Cross-Claim ¶¶ 28-31.) In its motions, Liberty submitted the affidavit of Grant Booker, legal counsel for Bennett, which directly controverts Plaintiffs' alleged fact regarding Bennett being issued an Oklahoma motor carrier license.

> Bennett Motor Express, LLC is an interstate motor carrier. It is registered pursuant to the Federal Motor Carrier Transportation Act in its home state of Georgia, and operates under ICC No. MC-129712. It has never applied for, or been issued, an interstate commerce license from or with the Oklahoma Corporation Commission.

(*See* Ex. B to Mots. for Summ. J.) In their respective response briefs, Plaintiffs submitted wholly irrelevant evidence showing that *Liberty* was a licensed Oklahoma corporation, which has no bearing on the question of whether Bennett holds an Oklahoma motor carrier license issued by the OCC. Taylor did not submit any evidence in response to the affidavit.

Neither Plaintiffs nor Taylor have presented evidence that creates a genuine question of fact as to whether Bennett holds an Oklahoma motor carrier license and/or whether Bennett has filed a copy of the relevant Liberty insurance policy with the OCC. Under these circumstances, Liberty cannot be directly sued pursuant to § 230.30 because the plain language of the statute does not extend to Bennett or its insurer. *See* Okla. Stat. tit. 47, § 230.30(A) (providing that upon applying for Oklahoma license, a motor carrier must file insurance policy with OCC and that the insurance

7

policy "shall bind the obligor thereunder to make compensation for injuries to, or death of, persons, and loss or damage to property, resulting from the operation of any carrier for which the carrier is legally liable"); *see also Fierro v. Lincoln Gen. Ins. Co.,* 217 P.3d 158 (Okla. Civ. App. 2009) (addressing issue of "whether the [OMCA] permits a direct cause of action against an interstate motor carrier's liability insurer, when the interstate motor carrier is properly registered in its home state") (where motor carrier involved in the Oklahoma accident did not and had never "operate[d] pursuant to an Oklahoma Motor Carrier License," court held that § 230.30 did not apply to the insurer because its insured was an "interstate motor carrier" that "does not operate pursuant to an Oklahoma Motor Carrier License"). The facts presented in this case are factually indistinguishable from *Fierro*.[7] Accordingly, Liberty is entitled to summary judgment and may not be directly joined in Plaintiffs' action or Taylor's Cross-Claim pursuant to § 230.30.[8]

---

[7] Recently, the undersigned "decline[d] to extend *Fierro*'s protection to an insurer whose insured holds an Oklahoma license and an interstate license [with a state of registration other than Oklahoma], even where the evidence shows that goods were being transported interstate at the time of the accident." *See Sallee v. L.B. White Trucking, Inc.*, Case No. 11-CV-212-TCK, 2012 WL 314237, at * 8 (N.D. Okla. Feb. 1, 2012). This Court reasoned that (1) the facts were distinguishable from *Fierro* because the motor carrier held an Oklahoma motor carrier license in addition to an interstate license issued by its home state; (2) *Fierro* was not binding precedent; (3) *Fierro*'s reasoning was not persuasive; (4) the concurring opinion in *Fierro* declined to join in any part of the decision that could be construed as extending to motor carriers that held an Oklahoma license; and (5) the "policy reasons for vesting a right in the injured party against the motor carrier's insurer [were] present," including the motor carrier having an insurance policy on file with the OCC. *See id.* at * 8-9. The Court cites *Fierro* in this case because the facts fit within the uncontroversial application of *Fierro*'s holding and reasoning – namely, in cases where the motor carrier has never received an Oklahoma license and therefore has no insurance policy on file with the OCC.

[8] Plaintiffs argue, apparently in the alternative, that the Court must permit suit against Liberty because Georgia law, Bennett's admitted state of registration, also permits direct actions against motor carrier insurers. (*See* Pls.' Resp. to Mots. for Summ. J. 3.) Assuming this is a correct statement of law, it is irrelevant because Plaintiffs and Taylor sued Liberty pursuant to Oklahoma law – namely, § 230.30. Plaintiffs have not invoked Georgia law, argued that Georgia law applies to the dispute, or briefed any "choice of law" questions. The Court finds no reason to analyze

8

## III. Defendants' Motion to Realign

Defendants Bennett and Wells move the Court to "realign" Taylor as an intervenor and construe the Cross-Claim as a Complaint in Intervention pursuant to Federal Rule of Civil Procedure 24 ("Rule 24"). Defendants argue that Plaintiffs have no actual claim against Taylor and that Taylor is more appropriately classified as an intervenor. Plaintiffs oppose such motion, arguing that Weekley has the following dispute with Taylor:

> There is a dispute between [Taylor] and [Weekley] as to which state's law of subrogation will apply and how much subrogation there will be. There is also a dispute as to whether [Taylor] can subrogate to monies awarded for loss of consortium as opposed to monies awarded to the injured employee.

(Pls.' Resp to Mot. to Realign 3 (footnote omitted).) Initially, Taylor opposed its classification as an intervenor. Subsequently, Taylor withdrew its objection to Defendants' Motion to Realign and requested that the Court classify it as an intervenor. (*See* Taylor's Mot. to Amend 1 ("[Taylor] is more properly positioned in this case as an intervenor, and respectfully requests the Court enter an order granting Defendants' Motion to Realign Parties.").)

As an initial matter, the Court sua sponte concludes that Plaintiffs' sixth cause of action fails to state a claim for relief against Taylor and is subject to dismissal. In its entirety, Plaintiffs' sixth cause of action, entitled "Subrogation - Necessary Parties," provides:

> [Taylor] has paid workers compensation benefits to [Weekley] as aforesaid as a result of [Bennett and Wells'] conduct. [Taylor] has a subrogation claim against [Weekley] and/or [Bennett and Wells]. Taylor is a necessary and indispensable party to this action and [its] subrogation rights should be determined and decided under applicable law in conjunction with Plaintiffs' claims.

---

Georgia law when Oklahoma law is pled as the basis for direct suit against Liberty.

(Compl. ¶ 41-43.) Plaintiffs' attempt to invoke Federal Rule of Civil Procedure 19(a) as the basis for a cause of action against Taylor is entirely misplaced. Rule 19 generally comes into play when a plaintiff has elected not to join certain parties. *See* 7 Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, *Federal Practice and Procure* § 1602 (3d ed. 2010) (explaining that "[c]ompulsory joinder is an exception to the general practice of giving plaintiff the right to decide who shall be the parties to a lawsuit" and that "plaintiff's choice will have to be compromised when significant countervailing considerations make the joinder of particular absentees desirable"). Rule 19 is "designed to protect the interests of absent persons as well as those already before the court from multiple litigation or inconsistent judicial determinations." *Id.*

In this case, Plaintiffs sued Taylor. Therefore, the question is not whether Taylor is an absent but indispensable party; the question is whether Plaintiffs have stated a claim for relief against Taylor simply by alleging that Taylor is a necessary party. The Court finds that Plaintiffs' Complaint fails to plead any actual cause of action against Taylor. Plaintiffs may desire that Taylor pursue its subrogation interest in this Court, but that does not create a cause of action or basis for affirmative relief against Taylor. Nor does Plaintiffs' desire, stated in their briefs, to litigate certain legal questions before this Court instead of permitting Taylor to choose the forum in which it litigates its own subrogation rights. In short, Plaintiffs have not pled any actionable claim for relief against Taylor, and such claim is dismissed with prejudice.[9]

Second, the Court construes Taylor's Motion to Amend, in which Taylor states its non-opposition to the Motion to Realign, as a motion to intervene as of right pursuant to Rule 24(a)(2).

---

[9] Notably, Plaintiffs did not seek declaratory or any other equitable relief. They simply stated that Taylor was an "indispensable" party due to its subrogation rights. Even if true, Rule 19 is not a substantive basis for suit, as explained above.

The Court has considered Plaintiffs' arguments regarding why Taylor should remain a defendant rather than an intervening party, rejects all such arguments, and finds no reason to allow further briefing on the question of intervention. The Court finds that Taylor's interest in this litigation, as pled in its Cross-Claim and proposed Amended Cross-Claim, satisfies the qualifications of Rule 24(a)(2). By serving its Motion to Amend (Doc. 42) on all parties, serving its Cross-Claim (Doc. 9) on all parties, and serving its proposed Amended Cross-Claim (Doc. 45, Ex. A) on all parties, Taylor has satisfied the notice and pleading requirements in Rule 24(c). Therefore, Taylor's motion to intervene is granted. Defendants' Motion to Realign is denied as moot.

**IV.    Taylor's Motion to Amend**

Taylor has moved to amend its Cross-Claim, which the Court construes as a motion to amend the pleading that will ultimately be filed as a Complaint in Intervention. Taylor's current Cross-Claim seeks to recover amounts paid to Weekley as workers' compensation benefits, pursuant to subrogation rights created by Minnesota law. Taylor now seeks to add a "count" entitled "Increased Premium Claim (Pursuant to Minnesota Statute § 176.061, subd. 5(c))." (*See* Ex. A to Aff. of Christopher Goodman, Doc. 45.) The proposed claim provides:

> Intervenor [Taylor] has sustained damages due to an increase in the workers' compensation insurance premiums it has incurred, and in the future will incur, as a result of the injuries sustained by [Weekley]. [Weekley's] injuries and damages were caused by the negligence of [Wells and Bennett] as set forth in Counts I-II. Pursuant to Minnesota Statute § 176.061, subd. 5(c), [Taylor] is entitled to recovery from [Wells and Bennett] for the increased workers' compensation premiums [Taylor] has incurred and will continue to incur . . . .

(*Id.*)

11

Taylor's Motion to Amend is governed by Federal Rule of Civil Procedure 15(a)(2), which provides that a court should "freely give leave when justice so requires."[10] Courts generally deny leave to amend only on "a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." *Duncan v. Manager, Dep't of Safety, City, and County of Denver*, 397 F.3d 1300, 1314 (10th Cir. 2005) (quotation omitted). In this case, Defendants oppose Taylor's Motion to Amend on grounds of futility, undue delay, and undue prejudice.[11]

The timeliness issue presented under Rule 15(a) is whether Taylor's delay in seeking amendment was "undue." *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1205 (10th Cir. 2006) (explaining that "[e]mphasis is on the adjective" in the "undue delay" analysis). According to the Tenth Circuit, "[t]he longer the delay, the more likely the motion to amend will be denied, as protracted delay, with its attendant burdens on the opponent and the court, is itself a sufficient reason for the court to withhold permission to amend." *Id.* (internal quotation omitted). In determining whether a delay is "undue," the Tenth Circuit "focuses primarily on the reasons for the delay." *Id.* at 1206. "[D]enial of leave to amend is appropriate when the party filing the motion has no adequate

---

[10] Defendants urge the Court to apply Federal Rule of Civil Procedure 16(b) to the Motion to Amend. However, the Tenth Circuit has not "decide[d] whether a party seeking to amend its pleadings after the scheduling order deadline must show 'good cause' for the amendment under Rule 16(b) in addition to the Rule 15(a) requirements." *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1205 n.4 (10th Cir. 2006) (explaining that some circuits require the party seeking amendment past a scheduling order deadline to (1) show that it was diligent in attempting to meet the deadline, and (2) provide an adequate explanation for its delay); *see Bylin v. Billings*, 568 F.3d 1224, 1231 n.9 (10th Cir. 2009) (noting that Tenth Circuit "has not ruled on that question in the context of an amendment to an existing pleading"). The Court therefore analyzes the motion under Rule 15 rather than Rule 16(b).

[11] The Court denies the motion based on undue delay and does not reach the questions of futility or undue prejudice.

12

explanation for the delay" or when a moving party fails to "demonstrate excusable neglect." *Id.* (citing *Fed. Ins. Co. v. Gates Learjet Corp.*, 823 F.2d 383, 387 (10th Cir. 1987)). In the Tenth Circuit, "[i]t is well settled . . . that untimeliness alone is a sufficient reason to deny leave to amend, especially when the party filing the motion has no adequate explanation for the delay." *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365–66 (10th Cir. 1993) (internal citations omitted).

Taylor filed its Cross-Claim on May 25, 2011. This was four days after it filed an action in the United States District Court of Minnesota ("Minnesota Action") against Bennett and Wells. In the Minnesota Action, Taylor asserted identical claims for "negligence" and "respondeat/superior agency" as it asserted in this litigation. On August 3, 2011, this Court entered a Scheduling Order setting a deadline of August 31, 2011 for motions to amend. In September 2011, Taylor's counsel reached an agreement with Defendants' counsel to avoid litigating the Minnesota Action pending the outcome of the motions before this Court.[12] In October 2011, Taylor's counsel attempted to reach an agreement with Defendants' counsel allowing Taylor to assert the increased premium claim in this case out of time. Defendants' counsel did not agree. Taylor filed the Motion to Amend on December 22, 2011, nearly seven months after filing its Cross-Claim and four months after the Court's deadline for filing motions to amend.

In its reply brief, Taylor offered the following "explanation" for its delay:

Taylor Truck was not dilatory in its assertion of the increased premium claim. In June 2011, Bennett Motor filed a Rule 12 motion to dismiss the Minnesota action. The Court advised the motion was improperly filed, and Bennett Motor withdrew its motion on September 12, 2011. On September 27, 2011, Taylor Truck reached an agreement with Bennett Motor's counsel to stay proceedings in the Minnesota action, pending resolution of the various motions filed last summer in the Oklahoma action.

---

[12] The docket sheet of the Minnesota Action does not indicate that the parties moved to stay or that the court entered a formal stay of such action.

13

> The agreement to stay the Minnesota action was beneficial to Bennett Motor as it alleviated the need to litigate two aspects of this case in two forums, and conserved judicial resources. One week later, when Charles and Barbara Weekley were deposed on October 4, 2011, Taylor Truck's counsel proposed a stipulation for the application of Minnesota law to Taylor Truck's claim. Shortly thereafter, Taylor Truck circulated a stipulation that would allow for the addition of a claim for increased premium. This motion [to amend] only became necessary after Bennett Motor refused to stipulate to the amendment which Taylor Truck proposed over three months ago.

(Taylor's Reply in Support of Mot. to Amend 10-11 (citations omitted).)

This is not an adequate explanation for the delay. First, the agreement to suspend litigating the Minnesota Action has nothing to do with the question of whether the increased premium claim should have been timely asserted in this litigation. Taylor's argument would make some sense if the increased premium claim was asserted in the Minnesota Action, such that the agreement to stay those proceedings resulted in a need to add the claim to these proceedings out of time. However, the increased premium claim is not asserted in either forum, and the Court is unclear how the course of events regarding the Minnesota Action explains Taylor's delay in seeking amendment in this case. Second, although Taylor cited the October 2011 depositions as a relevant event, Taylor failed to explain any facts that came to light during such depositions that caused it to first become aware of the increased premium claim. Finally, in its original Cross-Claim, Taylor cited the same Minnesota statute as the basis for its right to subrogation, indicating that Taylor was aware or should have been aware of the statutory basis for its proposed increased premium claim. In short, Taylor was aware or should have been aware of all facts and law supporting the proposed amendment at the time it filed its Cross-Claim, and Taylor has failed to adequately explain its delay in seeking amendment. Accordingly, the Motion to Amend is denied.

## V. Defendants' Motion to Dismiss Claims of Adult Children

Defendants move to dismiss the parental consortium claims of James, Nathan, and Matthew Weekley, all of whom are independent, non-incapacitated adult children of Weekley. In *Williams v. Hook*, 804 P.2d 1131, 1132 (Okla. 1990), the Oklahoma Supreme Court addressed, as an issue of first impression, "whether minor children or incapacitated dependent children may maintain a cause of action for the permanent loss of parental consortium when a parent is negligently injured by a third party." In a narrow 5-4 decision, the Oklahoma Supreme Court joined the "emerging trend toward acknowledgment of the cause of action." *Id.* at 1134. Six years later, in *Nelson v. Four Seasons Nursing Center*, 934 P.2d 1104, 1104 (Okla. Civ. App. 1996), the Oklahoma Court of Civil Appeals held "that extending a claim for loss of parental consortium to an adult child is consistent with the rationale of *Williams v. Hook*, 804 P.2d 1131 (Okla.1991), and squarely supported by the case authority from other jurisdictions that is cited approvingly in *Williams*." The court in that case allowed an adult child to proceed with a loss of parental consortium claim against a nursing home that allegedly negligently allowed his father to disappear. *Nelson*, 934 P.2d at 1104. Plaintiffs urge the Court to follow *Nelson*, and Defendants urge the Court to reject *Nelson* as unpersuasive, non-binding precedent.[13] The relevant facts are not disputed, and the issue presented is purely legal.

Under Tenth Circuit law, "where jurisdiction rests solely on diversity of citizenship and there is no controlling decision by the highest court of a state, a decision by an intermediate court should be followed by the Federal court, absent . . . convincing evidence that the highest court of the state would decide otherwise." *Webco Indus., Inc. v. Thermatool Corp.*, 278 F.3d 1120, 1132 (10th Cir.

---

[13] The Court did not locate any published Oklahoma cases citing *Nelson* positively or negatively.

15

2002). The Court concludes that the Oklahoma Supreme Court would not permit a parental consortium claim by a non-incapacitated adult child and therefore declines to follow *Nelson*. The Court so concludes for three reasons. First, the court in *Williams* expressly limited its cause of action to "minor children" and "incapacitated dependent children." *Id.* at 1132. This holding demonstrates that the Oklahoma Supreme Court expressly excluded all other "children," including non-incapacitated adult children, from the subclass of "children" entitled to recover for parental consortium. By including one class of adult children – namely, those who are incapacitated and therefore dependent on the negligently injured parent even after reaching the age of majority – the court indicated its intent to exclude all other adult children. In *Nelson*, the court reasoned that "[t]here is simply no good reason to afford the personal right of companionship and the parent-child relationship less protection in cases involving adult children who seek to recover for injury to the parent-child relationship." *Nelson*, 934 P.2d at 1105. This observation, whether true or not, is beside the point if the Oklahoma Supreme Court excluded that class of individuals from the newly created cause of action. In this Court's view, the Oklahoma Supreme Court clearly and specifically delineated only two classes of litigants entitled to bring the claim.

Second, the *Williams* majority was carving out a new cause of action for limited and specific policy reasons. These policy reasons centered on the plaintiff's status as a *minor* child:

> The reasons for recognizing a child's cause of action for loss of parental consortium outweigh any problems the action may present. Although a monetary compensation will not allow a child to regain what was lost when the parent was injured, it may aid in ensuring the *child's continued normal and complete mental development into adulthood*, and lessen the impact of the loss. Another basis for acknowledging the right to recover is that society and the courts are becoming increasingly aware *of children as persons with rights*. Because a child has to deal with the day-to-day realities of the disabilities of a severely injured parent, the child may suffer more intense and enduring mental anguish and suffering than would be the case if the parent died. Children whose parents suffer extensive injuries, are deprived of any

16

> further parent-child exchange *throughout the remainder of their childhood years*, and lack an essential role model. Logic, justice, and public policy demand protection for a child's interest in the family relationship.
>
> We have reviewed the arguments on both sides and find the arguments favoring the cause of action for loss of parental consortium more persuasive – we are hard pressed to find a distinction between allowing children to recover for the loss of consortium a child suffers through the actual death of a parent under 12 O.S.1981 § 1053 and refusing to allow recovery for the loss of consortium when for all practical purposes the parent is in a state which equates death. Here, two minor children have been deprived of the love, care, and companionship of their mother. *Allowing a child to recover for the loss of parental consortium may aid in ensuring the child's normal and complete mental development.*

*Id.* at 1136 (footnotes omitted and emphases added). By repeatedly discussing the child's normal and complete mental development into adulthood, the court further indicated its intent to exclude "children" who have reached adulthood. In at least one law review article reviewed by the Oklahoma Supreme Court and cited in footnote 3 of *Williams*, the commentator's proposed legislative reform did not include adult children:

> Only dependent children should be able to sue for loss of parental consortium. Doubtless, an independent adult child also loses love and companionship when his parent is injured, but in most cases consortium loss decreases with age. A child's emotional dependence is much greater when he is younger. Limiting the consortium action to dependent children would compensate serious injury and avoid argument over less severe or nonexistent injuries. Permitting adult children to recover would be theoretically ideal, but practically wasteful. The legislature properly can avoid that waste.

Gino L. Gabrio, *Actions for Loss of Consortium in Washington: The Children Are Still Crying*, 56 Wash. L. Rev. 487, 499-500 (1981) (footnotes omitted). Therefore, nothing about the *Williams* court's reasoning contradicts the plain language of its holding or supports expansion of the cause of action to adult, non-incapacitated children.

Finally, following *Williams*, the Oklahoma Supreme Court adopted Oklahoma Uniform Jury Instruction 4.7 ("OUJI 4.7"), which provides:

17

> Parental consortium is defined as the love, care, companionship, and guidance given by a parent to a minor child. For [Plaintiff] to recover on this claim you must find all the following:
> A. [Parent] is entitled to recover damages from [Defendant] for [his/her] injuries;
> B. [Parent]'s injury is permanent.
> *C. [Plaintiff] was the minor [or incapacitated dependent] child of [Parent] at the time [Parent] sustained the injuries.*
> D. As result of the injuries sustained by [Parent], [Plaintiff] sustained a loss of parental consortium.

OUJI 4.7 (emphasis added); *see also* Okla. Stat. tit. 12, § 577.1 (requesting and authorizing Oklahoma Supreme Court to "prescribe and institute uniform instructions to be given in" civil jury trials); *Thomas v. Gilliam*, 774 P.2d 462, 465-466 (Okla. 1989) (explaining that, where OUJI contains a pertinent applicable instruction, Oklahoma trials court must use the instruction unless the court determines that the instruction does not accurately state the applicable law). If this Court followed *Nelson*, it would be forced to modify the instruction by omitting "minor or incapacitated dependent" from the third element, leaving the instruction to read "Plaintiff was the child of Parent at the time Parent sustained injuries." This is a significant expansion of the instruction as approved by the Oklahoma Supreme Court, and this Court is unwilling to modify the instruction in this manner.

The Court has considered *Nelson*'s reasoning, *Nelson*'s cited case law from other jurisdictions, and *Nelson*'s conclusion that the Oklahoma Supreme Court would extend the parental consortium to adult children. However, the holding and reasoning of the *Williams* decision itself and the language of OUJI 4.7 constitute "convincing evidence" that the Oklahoma Supreme Court intended to limit the parental consortium cause of action to minor children and incapacitated dependent children. The cause of action and its precise parameters were created by the *Williams* decision, and such decision provides no room for expansion beyond the two identified classes of

litigants. Therefore, the Court declines to follow *Nelson v. Four Seasons Nursing Center*, 934 P.2d 1104, 1104 (Okla. Civ. App. 1996), and declines to extend the parental consortium cause of action to independent, non-incapacitated adult children.

## VI.    Conclusion

The Court orders as follows:

1. Liberty's Motions for Summary Judgment (Docs. 18, 21, 22) are GRANTED, and Liberty is terminated as a party to Plaintiffs' Complaint and to Taylor's Cross-Claim.

2. Defendants' Motion to Realign (Doc. 19) is DENIED AS MOOT.

3. Taylor's Motion for Leave to Amend its Cross-Claim (Doc. 42), which is construed as a Motion to Intervene and to Amend its Complaint in Intervention, is GRANTED IN PART AND DENIED IN PART. The motion to intervene is granted, and Taylor may file a Complaint in Intervention no later than five days from entry of this Order. The motion to amend the Complaint in Intervention to include a claim for increased premiums is denied. The Complaint in Intervention shall be identical to the Cross-Claim originally filed, except that it shall omit any claims against Liberty.

4. Defendants' Motion to Dismiss Claims of Adult Children (Doc. 20) is GRANTED. Plaintiffs Nathan, Jason, and Matthew Weekley are terminated as parties to the litigation.

5. Following Taylor's filing of its Complaint in Intervention, the new case caption shall appear as follows:

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CHARLES WEEKLEY, and <br> BARBARA WEEKLEY, <br> <br>     Plaintiffs, <br> <br> v. <br> <br> <br> BENNETT MOTOR EXPRESS, LLC, and <br> JAMES WELLS, <br> <br>     Defendants. <br> <br> and <br> <br> TAYLOR TRUCK LINES, INC., <br> <br>     Intervening Plaintiff, <br> <br> v. <br> <br> BENNETT MOTOR EXPRESS, LLC, and <br> JAMES WELLS, <br> <br>     Intervening Defendants. | Case No. 11-CV-228-TCK-PJC <br> [consolidated for all purposes <br> with 11-CV-569-TCK-PJC] |

**SO ORDERED** this 2nd day of May, 2012.

*/s/ Terence C. Kern*
_____
**TERENCE C. KERN**
**UNITED STATES DISTRICT JUDGE**